**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Bishop Harding Smith, | Case No. 25-cv-4348 (ADM/DJF) |
| Plaintiff, | |
| v. | **REPORT AND**<br>**RECOMMENDATION** |
| Mayor Winston, *individually and in his*<br>*official capacity as Mayor of the City of*<br>*Brooklyn Park*, the City of Brooklyn Park;<br>and the Brooklyn Park City Council, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (ECF No. 10). Plaintiff Bishop Harding Smith alleges Defendants made or allowed to be made "false" and "malicious" statements about him and "falsely and maliciously" interfered with an award of contracts to his nonprofit organization, Minnesota Acts Now ("MAN"). Plaintiff asserts claims against Defendants for defamation per se, violation of the Minnesota Government Data Practices Act (Minn. Stat. § 13.01), malfeasance in office (Minn. Stat. § 351.14), violation of due process under the United States and Minnesota Constitutions, and violation of the Brooklyn Park City Charter and City Ethics Code. Based on the parties' written submissions, and on the entire file, the Court recommends that the Motion be granted.

## I.      BACKGROUND

### A.      Factual Allegations

Plaintiff alleges that, on or about April 30, 2023, Defendant Mayor Hollies Winston ("Mayor Winston") appeared on KMOJ Radio's "Al Flowers Show," during which Mayor Winston "falsely and publicly accused Plaintiff of corruption, theft, and misuse of funds." (*Id*. at

5.)  Plaintiff further alleges that on May 13, 2023, Mayor Winston falsely accused Plaintiff of "issuing threats toward [Mayor Winston] and of demeaning others". (*Id*.)

Plaintiff is the president of MAN, a violence prevention nonprofit. (*Id*. at 4.)  MAN held a contract with the City of Brooklyn Park (the "City") to perform violence interruption work for the City, which ended on December 31, 2022. (*Id.* at 5.)  Plaintiff alleges that, around May 22, 2023 during a meeting of the Brooklyn Park City Council ("City Council"), "multiple speakers were allowed to publicly defame Plaintiff by accusing him of misappropriating grant funds, even though Plaintiff had returned $200,000.00 in surplus funds to the City at the conclusion of his gun safety and violence prevention contract on December 31, 2022." (*Id*.)  According to Plaintiff, the City Manager and City Attorney "tacitly" endorsed the statements made at the City Council meeting because they failed to correct the public record or issue a disclaimer. (*Id*.)  Plaintiff alleges the City Council meeting was broadcast on official media channels, "amplifying the defamatory content." (*Id*.)

Plaintiff contends that, beginning in March 2023, Defendants "falsely and maliciously" interfered with an award of contracts to him and MAN, including a contract valued at approximately $680,000. (*Id*.)  He further alleges that "Defendants unlawfully disseminated false and misleading government data" concerning him "without consent and outside the procedures allowed under state law." (*Id*. at 6.)

### B.    Claims and Defenses

Plaintiff initiated this action in Minnesota state court on October 21, 2025. *See* Minn. R. Civ. P. 3.01(a); (ECF No. 1 at 2).  Plaintiff brings five counts against Defendants. (ECF No. 1-1 at 6-7.)  Count I asserts defamation per se against all Defendants for making "false statements accusing Plaintiff of criminal wrongdoing including corruption, theft, and misuse of public funds."

(*Id*. at 6.)   Count II asserts a violation of the Minnesota Government Data Practices Act ("MGDPA") (Minn. Stat. § 13.01), presumably against all Defendants, for "unlawfully [disseminating] false and misleading government data concerning Plaintiff, without consent and outside the procedures allowed under state law." (*Id*.)   Count III alleges malfeasance in office against Defendants Mayor Winston and the City Council under Minn. Stat. § 351.14, for committing "wrongful acts by making and tolerating defamatory and false accusations against Plaintiff." (*Id*.)   Count IV alleges violations of due process under both the United States Constitution (Fourteenth Amendment) and the Minnesota Constitution (Article 1, Section 7), for depriving Plaintiff of "liberty interests in his good name and reputation without notice or hearing." (*Id*. at 6-7.)   Finally, Count V alleges violations of the Brooklyn Park City Charter and Brooklyn Park City Ethics Code for "dishonesty, partial, and retaliatory conduct that misused public office for personal or political purposes." (*Id*. at 7.)

Plaintiff states that Defendants' actions caused "emotional, psychological and other distress" that resulted in the death of his wife, Ruth Smith, on April 14, 2025. (*Id*.)   He further alleges "severe reputational damage, emotional distress, loss of community standing, and professional harm." (*Id*.)   He seeks compensatory damages in the amount of $350,000, punitive damages, his litigation costs, and an injunction ordering Defendants "to retract and remove all defamatory statements." (*Id*.)

Defendants removed this action to federal court on November 17, 2025 and filed an Answer the same day. (ECF Nos. 1, 2.)   Defendants filed their Motion for Judgment on the Pleadings ("Motion") several months later, on February 12, 2026. (ECF No. 10.)

Defendants' Motion advances multiple arguments in support of dismissal.   As a threshold matter, Defendants assert that the City Council cannot be sued because it is a municipal

department, which is not subject to suit.  (ECF No. 13 at 5.)  Next, Defendants argue Plaintiff's

defamation claim (Count I) should be dismissed on multiple grounds: (1.) because it is barred by

the statute of limitations; (2.) Plaintiff has failed to state a defamation claim under Rule 12(b)(6)

of the Federal Rules of Civil Procedure; (3.) Plaintiff does not have standing to pursue that claim;

and (4.) the alleged statements are protected by qualified privilege.  (*Id*. at 6-14.)  Defendants

further assert that Plaintiff has failed to state a claim under the MGDPA (Count II) because the

Complaint[1] is devoid of factual allegations relevant to that claim.  (*Id*. 13 at 14-15.)  Defendants

move to dismiss Plaintiff's claims for malfeasance in office and violations of the City Charter and

City Ethics Code (Counts III and IV) on the ground that no private cause of action for those claims

exists.  (*Id*. at 15-17.)  Finally, Defendants contend that Plaintiff's due process claim (Count V)

lacks merit because Plaintiff has failed to identify a constitutionally-protected liberty interest of

which he has been deprived.  (*Id*. at 17-19.)

## II.    LEGAL STANDARD

A party may move for judgment on the pleadings at any point after the close of the

pleadings, so long as it files the motion early enough to avoid a trial delay.  Fed. R. Civ. P. 12(c).

"Judgment on the pleadings is appropriate only when there is no dispute as to any material facts

and the moving party is entitled to judgment as a matter of law …."  *Ashley County v. Pfizer, Inc.*,

552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir.

2006)).  The Court evaluates a motion for judgment on the pleadings under the same standard as a

motion brought under Fed. R. Civ. P. 12(b)(6).  *Id.*

---

[1] Defendants refer to the Complaint as an "Amended Complaint".  However, the pleading
attached to Defendants' Notice of Removal is captioned "Complaint" (ECF No. 1-1), and there is
no evidence in the record of this case establishing that Plaintiff filed an amendment.

In deciding such a motion, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. Although pro se complaints must be construed liberally, Rule 12(b)(6) applies to pro se litigants, and their complaints must contain sufficient facts to state a claim as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III.     ANALYSIS

### A.     Claims Against the City Council

Defendants argue that the City Council is not amendable to suit, and the Court agrees. Rule 17(b)(3) of the Federal Rules of Civil Procedure establishes that state law determines an entity's capacity to sue or be sued. The City Council is a department of the City of Brooklyn Park established by charter. Brooklyn Park, Minn., City Charter ("City Charter") §§ 1.02, 2.01. The

5

City Charter states that "[d]amage suits and recovery of judgment for damage shall be in accordance with State statutes." *Id*. at Section 14.12. Because the City Charter is otherwise silent on the City Council's capacity for suit, the Court looks to Minnesota's Statutory Cities statutes. Minn. Stat. ch. 412. Though these statutes establish that *cities* are municipal corporations, which may sue and be sued, they are silent regarding the capacity for *city councils* to sue and be sued. Minn. Stat. §§ 412.191, 412.211.

Minnesota's courts have not directly addressed whether a city council is generally subject to suit under the Statutory Cities statutes.[2] In *Galob v. Sanborn*, however, the Minnesota Supreme Court determined that a city's public utilities commission could not be sued. 160 N.W.2d 262, 265 (1968). The court reasoned that the utilities commission was established by statute, and therefore, its powers were limited to those expressed in the statute. *Id.* The court concluded that because the statute did not expressly grant the commission the ability to sue and be sued, it was merely a facet of the city and could not be sued separately. *Id.* The Minnesota Court of Appeals has held similarly that police departments, as departments or agents of the city, are not "legal [entities] subject to suit." *Hyatt v. Anoka Police Dep't.*, 700 N.W.2d 502, 506 (Minn. Ct. App. 2005); *see also Harrigan v. Osage Beach Police Dept.,* No. 23-3692, 2024 WL 1928640 (8th Cir. May 2, 2024).

Like a utilities commission or police department, the City Council is a facet of the City, with its duties and powers established by the City Charter and state statute. City Charter § 14.12; Minn. Stat. § 412.191. Because neither the City Charter nor state law establishes that the City

---

[2] In *Khan v. Minneapolis City Council*, 792 N.W.2d 463 (Minn. Ct. App. 2010), and *Spann v. Minneapolis City Council*, 979 N.W.2d 66 (Minn. 2022), the courts considered suits against the Minneapolis City Council for injunctive relief. However, the City of Minneapolis operates under a different charter, and the courts in those cases did not expressly consider whether city councils in Minnesota generally are subject to private lawsuits pursuant to the applicable state statutes.

Council may be sued, it follows that the City Council is merely a subdivision of the City that is not independently subject to suit. Therefore, the Court recommends that the City Council be dismissed from this action.

### B.    Defamation Per Se

Defendants argue the Court should dismiss Plaintiff's defamation claim (Count I) because it is barred by the statute of limitations, he has failed to state an actionable claim for defamation under Rule 12(b)(6), any alleged defamatory statements are protected opinion, Plaintiff lacks standing to pursue this claim, and any alleged defamatory statements are protected by qualified privilege. The Court concludes this claim is barred under the statute of limitations and recommends dismissal on that ground.

In a diversity action such as this one, "Minnesota's substantive law, including its statute of limitations, applies." *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 866 (8th Cir. 2000). Minnesota's substantive law includes Minnesota's rules regarding when a claim accrues and when a lawsuit is commenced, because those rules "are 'part and parcel of the statute of limitations.'" *Id.* at 867 (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)).

Under Minnesota law, the statute of limitations applicable to Plaintiff's defamation claim is two years. *See* Minn. Stat. § 541.07(1); *see also Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*, 437 F. Supp. 3d 693, 706 (D. Minn. 2020) ("Under Minnesota law, defamation claims are subject to a two-year statute of limitations."). The cause of action for defamation accrues "when the defamatory matter is published to a third party". *Wild v. Rarig*, 234 N.W.2d 775, 794 (Minn. 1975); *see also Rassier v. Sanner*, 996 F.3d 832, 838 (8th Cir. 2021) (stating that, under Minnesota law, defamation claims "accrue on the date of the tortious act"). A civil action is commenced against a defendant "when the summons is served upon that defendant". Minn. R. Civ. P. 3.01(a).

Based on the facts alleged in the Complaint, Plaintiff did not bring this action within the limitations period. His defamation cause of action accrued, at the very latest, on May 22, 2023—the date of the Brooklyn Park City Council meeting during which he alleges he was defamed. (ECF No. 1-1 at 5.) Plaintiff commenced this action on October 21, 2025 when he served the Summons and Complaint, which is more than two years after the alleged defamation occurred. *See* Minn. R. Civ. P. 3.01(a); (ECF No. 1 at 2). Plaintiff's defamation claim is therefore time-barred.

Plaintiff argues the statute of limitations does not bar his claim because Mayor Winston has continued to defame him, even as recently as October 2025. (ECF No. 21 at 4.) He argues that under the continuing violation doctrine, the two-year statute of limitations does not apply to ongoing defamatory conduct.

Whether the continuing violation doctrine applies to defamation claims is questionable. *See Aburime v. Minnesota Correctional Facility OPH*, No. C6-97-917, 1997 WL 6351509 *2 (Minn. Ct. App. Oct. 14, 1997) (declining to apply continuing violation doctrine to defamation claim because Plaintiff failed to establish a "systematic repetition" of the allegedly defamatory conduct). The Minnesota Supreme Court has rejected a similar argument under which each publication of a defamatory statement would toll the two-year limitations period, *Church of Scientology of Minnesota v. Minnesota State Med. Ass'n Found.*, 264 N.W.2d 152, 155 (Minn. 1978), and Plaintiff fails to cite any applicable case concluding the continuing violation doctrine applies in this context (*see* ECF No. 21 at 4).

Moreover, the Complaint fails to allege any ongoing defamation after May 2023. *See Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 959 (D. Minn. 2000) ("When considering a motion to dismiss, the Court looks only to the factual allegations in the complaint. Any allegations

made in subsequent legal memoranda cannot correct inadequacies within a complaint.") (citing *Morgan Distrib. Co., Inc. v. Unidynamic Corp.,* 868 F.2d 992, 995 (8th Cir.1989) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")). Though Plaintiff alleges that "on or about March, 2023 and continuing to date, the Mayor and high-ranking officials in his administration falsely and maliciously interfered with an *award of contracts* to the Plaintiff and his organization" (ECF No. 1-1 at 5, emphasis added), the Complaint points to no defamation occurring at any point after the City Council meeting on May 22, 2023. The Court thus concludes the statute of limitations bars Plaintiff's defamation claim.[3]

### C.    Data Practices Violation

Defendants challenge Plaintiff's claim under the Minnesota Government Data Practices Act ("MGDPA") on the ground that he has failed to plead any factual allegations supporting it. The MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities" and "establishes a presumption that government data are public and are accessible by the public for both inspection and copying unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public." Minn. Stat. § 13.01, subd. 3. A responsible authority or government entity becomes liable for violating the MGDPA by improperly using or disseminating an individual's private or confidential data. *See* Minn. Stat. §§ 13.08, subd. 1; 13.05, subd. 4. The MGDPA further

---

[3] Because the Court recommends dismissal based on the statute of limitations, it need not reach Defendants' remaining arguments for dismissal of this claim. However, in the interest of completeness, the Court notes that Plaintiff did not identify any of the alleged defamatory statements with specificity. (*See* ECF No. 1-1 at 5-6, stating vaguely that Mayor Winston, and "Defendants" collectively, "made false statements accusing Plaintiff of criminal wrongdoing including corruption, theft, and misuse of public funds".) His failure to detail specifically what was said constitutes an alternative basis for dismissal under Rule 12(b)(6). *See Pinto v. Internationale Set, Inc.*, 650 F.Supp. 306, 309 (D. Minn. 1986) (holding allegedly defamatory statements must be specifically set out in the Complaint); *see also Asay v. Hallmark Cards*, 594 F.2d 692, 698-99 (8th Cir. 1979).

9

establishes procedures an individual may follow to contest the accuracy or completeness of a government entity's public or private data about the individual.  Minn. Stat. § 13.04, subd. 4.

However, the Complaint fails to explain how the rights and procedures established under the MGDPA apply to Plaintiff.  It pleads no facts suggesting any of the Defendants disclosed protected information about Plaintiff to individuals or entities not otherwise authorized to access it, or that they disclosed inaccurate or incomplete data about him.  In fact, Plaintiff pleads no facts regarding his MGDPA claim at all aside from a conclusory statement in Count II that "Defendants unlawfully disseminated false and misleading government data concerning Plaintiff, without consent and outside the procedures allowed under state law." (ECF No. 1-1 at 6.)  This conclusory statement does not satisfy the pleading requirement to survive a motion for judgment on the pleadings.  *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.)  For this reason, the Court recommends that Plaintiff's MGDPA claim be dismissed.

### D.    Malfeasance in Office and Charter and Ethics Code Violations

Defendants seek dismissal of Plaintiff's malfeasance in office claim (Count III) and claim that Defendants violated the City Charter and City Ethics Code (Count V) because the underlying malfeasance statute (Minn. Stat. § 351.14, *et seq.*), the City Charter, and the City Ethics Code do not establish private causes of action.  Upon reviewing these authorities, the Court agrees.

Under Minnesota law, a statute does not establish a civil cause of action unless "the statute is explicit or it can be determined by clear implication." *Becker v. Mayo Foundation*, 737 N.W.2d 200, 207 (Minn. 2007) (citing *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990)); *see also Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682,

689 (Minn. 2014).  None of the authorities under which Plaintiff brings these claims include any provision expressly establishing a civil private right of action.  *See* Minn. Stat. § 351.15; City Charter,[4] and City Ethics Code.[5]

Furthermore, none of these authorities establish a private right of action by clear implication.  In determining whether a statute creates an implied civil cause of action, the Minnesota Supreme Court looks to legislative intent informed by basic principles of statutory construction.  *See Graphic Commc'ns*, 850 N.W.2d at 691-92 (no private cause of action created by pharmacy statute providing that difference in generic and brand name drug costs "shall be passed on to the purchaser"); *Krueger v. Zeman Const. Co.*, 781 N.W.2d 858, 863-64 (Minn. 2010) (Minnesota Human Rights Act provision prohibiting contract discrimination established cause of action for contracting parties but not their employees); *Becker,* 737 N.W.2d at 207-09 (Child Abuse Reporting Act establishes criminal liability but no private cause of action).

No clear implication of legislative intent to establish a civil cause of action arises from any reasonable construction of the malfeasance statute, the City Charter, or the City Ethics Code.  Each of these authorities imposes its own penalties for violations.  The malfeasance statute, Minn. Stat. § 351.15, establishes that an official may be removed from office for malfeasance.  The City Charter establishes misdemeanor punishments for certain violations of the Charter, *see* City Charter § 5.03 (prohibiting payment in exchange for circulating a recall petition), and establishes that the City Council may, by ordinance, create administrative penalties for violations of the City

---

[4] *Available at* https://www.brooklynpark.org/wp-content/uploads/2021/06/City-Charter-with-May-2022-Update.pdf.

[5] *Available at* https://www.brooklynpark.org/wp-content/uploads/2022/03/Approved-July-22-2024-Rules-Procedures-Code-of-Conduct.pdf.

Code and ordinances, *see* City Charter § 14.19(A). The Ethics Code establishes the consequences for violations of the Ethics Code by City officials, including admonition, reprimand, censure, and referral of any criminal conduct to the criminal justice system. *See* City Ethics Code §§ 8.1, 8.2. Enforcement mechanisms for the protections afforded under the legal authorities Plaintiff cites therefore already exist, and the Court assumes the State Legislature's and the City's decisions to impose those enforcement mechanisms while omitting any reference to private causes of action was intentional. *See Graphic Commc'ns*, 850 N.W.2d at 691 (reasoning that express criminal and civil penalties demonstrate that the Legislature did not intend to provide an implied private civil cause of action). Therefore, no clear implication arises that the Minnesota Legislature or the City Council intended to establish the civil claims Plaintiff seeks to advance for violations of these authorities. Plaintiff's claims under the malfeasance statute, the City Charter, and the City Ethics Code are not actionable for these reasons, and the Court accordingly recommends that they be dismissed.

### E.    Due Process

Defendants argue Plaintiff's due process claim (Count IV) should be dismissed because he has failed to identify a protected liberty interest that Defendants have violated. The Complaint alleges Defendants deprived Plaintiff of "liberty interests in his good name and reputation without notice or hearing," violating his due process rights as guaranteed by the United States Constitution (Fourteenth Amendment) and the Minnesota Constitution (Article 1, Section 7).[6] (ECF No. 1-1 at 6-7.) In his Response brief (ECF No. 21), Plaintiff clarifies that this due process claim arises from:

---

[6] The Court analyzes these claims together because procedural due process under the Minnesota constitution mirrors that under the United States Constitution. *See McDonald v. City of Saint Paul*, 679 F.3d 698, 704 (8th Cir. 2012) ("The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the Constitution of the United States.") (quoting *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988)).

12

(1.) the City's failure to renew its contract with MAN and Defendants' failure to explain that non-renewal; and (2.) Defendants' failure to "control the proceedings" or grant him a reasonable opportunity to defend himself during City Council meetings in which he allegedly was "maligned."

To plead a procedural due process violation,[7] Plaintiff must allege that there was: (1) "'a protected liberty or property interest at stake'"; and (2) Defendants "'deprived him of [that] interest without due process of law.'" *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011) (quoting *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999)); *see also, e.g.*, *Rud v. Johnston*, No. 23-cv-0486 (JRT/LIB), 2023 WL 6318615, at *4 (D. Minn. Sept. 28, 2023) (collecting cases).

To assess Plaintiff's first due process claim, the Court must determine whether he had a protected liberty or property interest in MAN's contract renewal with the City of Brooklyn Park or in receiving an explanation for the City's decision not to renew it. Because renewing a contract is not a protected liberty or property interest, this claim should be denied. *See McGuire v. Indep. Sch. Dist. No. 833*, 146 F. Supp. 3d 1041, 1046 (D. Minn. 2015), *aff'd*, 863 F.3d 1030 (8th Cir. 2017) ("A contract that naturally expires is a legitimate basis for its non-renewal and is not an unlawful termination that gives rise to procedural-due-process protections.").

Plaintiff's second due process claim appears to argue that Defendants' failure to control the proceedings at the City Council meeting resulted in a deprivation of his "liberty interests in his good name and reputation." But it is well established that damage to one's reputation alone is not a liberty or property interest protected by the Due Process Clause. *See Paul v. Davis*, 424 U.S.

---

[7] The Complaint does not state whether Plaintiff's due process claim asserts a violation of procedural due process or substantive due process. Given that Plaintiff's primary objections to Defendants' actions are the alleged lack of notice and hearing, the Court construes it as a procedural due process claim.

985, 711–12 (1976); *Does 1–2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 583 (8th Cir. 2021) (collecting cases).  Though reputational harm can certainly lead to emotional hardship, every such harm does not give rise to an actionable constitutional violation.  The Court therefore recommends dismissing Count IV for failure to state a claim.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Motion for Judgment on the Pleadings (ECF No. 10) be **GRANTED.**

2.      This matter by **DISMISSED WITH PREJUDICE**.

Dated: May 18, 2026                              *s/ Dulce J. Foster*
                                                Dulce J. Foster
                                                United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

14